Appeal of **CONSOLIDATED INVEST-**          Docket No. 392.
**MENT CO.**

> Evidence held insufficient to establish invested capital based upon the alleged value of a leasehold in 1906, or deduction for exhaustion based upon either the alleged value of the leasehold in 1906 when acquired by the taxpayer or upon the alleged value as of March 1, 1913.

Submitted December 15, 1924; decided January 8, 1925.

*H. A. Mihills, C. P. A.*, for the taxpayer.

*Arthur H. Fast, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before JAMES, STERNHAGEN, and TRUSSELL.

This is an appeal from a deficiency letter dated August 18, 1924, in which the Commissioner asserted additional income and excess profits tax due for the year 1918 in the sum of $3,104.46, and for the year 1920 in the sum of $6,429.98, a total of $9,534.44.

Oral hearing was had on December 15, 1924, at which hearing Lester L. Shumacker testified under oath and certain exhibits were offered on behalf of the taxpayer.

FINDINGS OF FACT.

The taxpayer on or about June 15, 1906, entered into a certain agreement with the Syndicate Trust Co., a corporation organized under the laws of the State of Missouri, under which agreement the trust company agreed to convey to the taxpayer all of a certain unexpired part of a leasehold estate in certain property in the city of St. Louis, Mo., theretofore acquired by the trust company. The trust company also agreed to cause the Hanover Investment Co., a

corporation of the State of Missouri, to enter into a lease with the taxpayer for 90 years from the first day of April, 1906, at a certain stated rental; to cause to be erected upon the property in question a 16-story building; and to cause certain other persons to become lessees under the taxpayer in the premises in question. In consideration of the foregoing agreements on the part of the trust company, the taxpayer agreed to make certain subleases negotiated for it by the trust company, as above mentioned, and to pay to the trust company in consideration of the foregoing $2,500,000 in a manner not specified, and in addition to deliver to the trust company $2,500,000 of thirty-year 5 per cent gold bonds, secured by a deed of trust or mortgage on all the property so to be acquired.

The taxpayer also caused to be read into the record the original book entries of the taxpayer under which it appeared that there was set up as of June 30, 1906, as assets, $5,000,000 as the cost of the property, and credited to the Syndicate Trust Co. $5,000,000. In the same entry the Syndicate Trust Co. was charged with $5,000,000, and there was credited to subscriptions to capital stock $2,500,000, and to first mortgage 5 per cent bonds, $2,500,000, with the notation " Consideration for the property purchased from and to be delivered by the trust company, the entire capital stock and bonds of the investment company."

### DECISION.

The determination of the Commissioner is approved and the Board finds a deficiency in income and excess profits tax for the year 1918 in the sum of $3,104.46, and for the year 1920 in the sum of $6,429.98.

### OPINION.

JAMES: The taxpayer appeals from the action of the Commissioner in rejecting as a part of claimed invested capital the sum of $1,250,000 representing the common stock of the taxpayer issued as a part of the $2,500,000 of capital stock, as above set forth in the findings of fact, and from the determination of the Commissioner rejecting as deductions from income for the years 1918 and 1919 the sums of $24,960.73 in each of the said years, and $23,882.29 in the year 1920.

The taxpayer has introduced the record of the original transaction between itself and the Syndicate Trust Co., apparently relying upon that record alone as establishing, first, its right to include in invested capital the sum of $1,250,000, and, second, its right to the deductions from income above mentioned. The record so introduced shows that the capital stock of the taxpayer was issued to the owner of the property transferred in the sums mentioned. No testimony was introduced to show the value of that property at the time it was transferred to the taxpayer and none was introduced to show the value of the property on March 1, 1913.

Section 326 of the Revenue Act of 1918 provides as to invested capital that there is included among other things " actual cash value of tangible property other than cash bona fide paid in for stock or shares at the time of such payment " and " intangible property bona fide paid in for stock or shares prior to March 3, 1917, in an amount

not exceeding (a) the actual cash value of such property at the time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding on March 3, 1917, whichever is lowest."

It does not clearly appear from the record whether the $1,250,000 of stock in question was issued in payment or part payment for the leasehold or for the tangible property thereon. It does not appear from the evidence introduced what was the actual cash value of the property paid in, whether leasehold or building, and it does not appear from the evidence what was the total outstanding capital stock of the taxpayer on March 3, 1917. On this branch of the case it is obvious that there is no evidence before the Board having any material bearing upon the issue between the taxpayer and the Commissioner.

With respect to the deductions claimed on account of exhaustion of the leasehold, it has been held in the *Appeal of Hotel de France Company*, 1 B. T. A. 28, and *Appeal of Grosvenor Atterbury*, 1 B. T. A. 169, that the deduction from gross income of " a reasonable allowance for the exhaustion, wear, and tear of property used in the trade or business" is applicable to leaseholds but must be based upon its cost or its value on March 1, 1913. The taxpayer having introduced no testimony as to the value on either the date it acquired the property, or March 1, 1913, there is nothing in the record before us upon which we could find that the Commissioner has erred in his determination with respect to the deduction claimed or with respect to the resultant deficiencies in tax. For these reasons the determination as asserted by the Commissioner must be affirmed.